IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CLAYLAND FARM ENTERPRISES, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR–14–03412 |
| TALBOT COUNTY, MARYLAND, *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case arises out of allegations by Plaintiff Clayland Farm Enterprises, LLC ("Plaintiff" or "Clayland") of certain constitutional violations committed by Defendants Talbot County, Maryland, et al. ("Defendants" or "Talbot County" or the "County"). (ECF No. 1). It has been referred to me for all discovery and related scheduling. (ECF No. 79). Since Defendants' original Motion for Protective Order, (ECF No. 103), various related discovery issues have been raised by the parties. (ECF Nos. 133-135). On July 18, 2018, I held a discovery status conference regarding those issues and addressed many then, and within my Letter Order dated July 19, 2018. (ECF No. 137). That Letter Order also requested additional briefing on two remaining and unresolved issues: (1) the "Ad hoc Working Group" privilege log entries; and (2) "other miscellaneous privilege log entries." (*Id.*) The Defendants filed supplemental briefing on August 31, 2018 (ECF No. 140),[1] Plaintiffs responded on September 12, 2018 (ECF No. 141), and Defendants replied on September 26, 2018. (ECF No. 142).

---

[1] Defendants' 71-page Supplemental Briefing violates Local Rule 105.3. The Defendant is advised that "memoranda in support of a motion or in opposition thereto and trial briefs shall not exceed thirty-five (35) pages[.]" D. Md. Local R. 105.3. While I decline to sanction the Defendants for this violation, I also warn that future violations will be taken seriously. *See Clark v. Daddysman*, CV TDC-16-0921, 2018 WL 1453333, at n.2 (D. Md. Mar. 22, 2018).

For the reasons set forth below, Defendant's Motion for Protective Order is GRANTED IN PART and DENIED IN PART.

## I. DISCUSSION

The primary issue at hand is the extent to which the "Ad Hoc Working Group" ("Working Group") is eligible to claim legislative privilege. Clayland argues that it is entitled to the production of the disputed documents because: (1) the Defendants failed to adequately assert legislative privilege; (2) any applicable legislative privilege would be qualified; (3) the Working Group's activities were not legislative and illegitimate; and (4) third party disclosures waived any privilege.

The Defendants contend that legislative privilege is appropriate and therefore the Working Groups documents need not be produced because: (1) their assertions of the privilege were adequate; (2) the legislative privilege would be absolute; (3) the Working Group's activities were legislative and legitimate; and (4) the third party waiver doctrine does not apply to legislative privilege.

### A. The Burden of Demonstrating Legislative Privilege

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). When information is withheld by claiming privilege, the withholding party must: "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id.* at 26(b)(5)(A). This process is achieved using privilege logs, and a sufficient one identifies "each document withheld, information regarding the nature of the privilege/protection

claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter." *Elat v. Ngoubene*, No. CIV. PWG-11-2931, 2013 WL 4478190, at *4 (D. Md. Aug. 16, 2013) (citing Discovery Guideline 10.d.; Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and Their Solutions,* 62–64 (2005)). Despite initial disputes over whether Defendants needed to provide a privilege log, one has since been compiled and produced for evaluation.

Clayland, citing to *United States v. Duke* Energy, 214 F.R.D. 383 (M.D.N.C. 2003), has asserted since the beginning of this discovery dispute that the Defendants must produce the disputed documents because they failed to make a "specific demonstration of facts" to support the assertions of privilege. (ECF No. 141 at 2). The process, however, involves a few more steps. *See Elat*, 2013 WL 4478190, at *5. First, a privilege is claimed, typically by use of a privilege log. *Id.* Second, if the claimed privilege is challenged the asserting party must establish an evidentiary basis for the privilege. *Id.* And third, if still contested, the dispute may be submitted to the court for review. *Id.* Currently, we are within this third step where the "party asserting privilege has the burden of demonstrating its applicability." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011). Before me are all the motions, correspondence, and briefing concerning the applicability of legislative privilege. (*See* ECF Nos. 103, 106, 111, 126, 127, 133, 134, 140, 141, and 142). The Court also has before it all of the disputed documents so that each may be reviewed *in camera.* Defendants have, therefore, provided enough of a factual basis to discern each document's subject matter, the names of those involved, the creation date and place, and the asserted privilege. The question now is whether the doctrine of legislative privilege is applicable under these circumstances. Thus, I do not find that Defendants facially failed to make a "specific demonstration of facts," and will now proceed

in evaluating whether the Defendants adequately demonstrated the applicability of legislative privilege.

### B. Absolute Legislative Privilege Applies

Legislative privilege exists to safeguard the legislative immunity enumerated in the Speech or Debate Clause of the United States Constitution "and to further encourage the republican values it promotes." *E.E.O.C. v. Washington Suburban Sanitary Comm'n,* 631 F.3d 174, 181 (4th Cir. 2011). "While the Speech and Debate Clause by its terms protects only federal officials, the Supreme Court has developed a similar doctrine of immunity that shields state, regional, and local officials from civil liability based on their actions taken 'in the sphere of legitimate legislative activity.'" *Benisek v. Lamone*, 241 F. Supp. 3d 566, 573 (D. Md. 2017) (quoting to *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). The common law doctrines of legislative immunity and privilege are both "motivated by the same policy of comity," and therefore applied "in a parallel manner." *Id.*

The privilege, however, exists in two flavors – qualified and absolute. *Benisek*, 241 F. Supp. 3d at 572-73. Legislative privilege is qualified "in federal criminal cases brought against individual legislators, or where important federal interests" cause comity to yield. *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 335 (E.D. Va. 2015) (listing cases); *see also Benisek*, 241 F. Supp. 3d at 572 (explaining that legislative privilege is "qualified, not absolute, in a context such as this redistricting litigation.").

On the other hand, absolute legislative privilege is appropriate in civil suits vindicating private rights. *See Bethune,* 114 F. Supp. 3d at 335; *Pulte Home Corp. v. Montgomery County, Maryland*, GJH-14-3955, 2017 WL 2361167, at *3 (D. Md. May 31, 2017) (apply absolute legislative privilege to dispute over land use and zoning). Absolute legislative privilege protects

4

against compelled production of documents and deposition testimony into actions that occurred within the "sphere of legitimate legislative activity. *See Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967); *Pulte*, 2017 WL 2361167, at *3. So if a plaintiff is seeking "information about acts that took place in the sphere of legitimate legislative activity, the legislative privilege will act as a bar to the compelled production of discovery." *Pulte*, 2017 WL 2361167, at *3.

Clayland argues that "the property interests the County has violated in the instant case are of a substantial degree sufficient to qualify any legislative privilege." (ECF No. 106 at 13). The Court disagrees. The consequences of a county governing land use within its jurisdiction do not implicate an important federal or public interest such as is found in voter redistricting litigation. Rather, this case concerns Clayland's use of its land pursuant to Talbot County's land use laws. These are private rights, therefore to the extent that legislative privilege applies, it is absolute.

### C. The Working Group's Activities Were Legislative and Legitimate

Clayland argues that the Working Group is not eligible for legislative privilege because its activities were administrative or executive in character. (ECF No. 106 at 6). Further, Clayland asserts that even if the activities were legislative, the Working Group is illegitimate because Defendants have not demonstrated that it was created by the County Council. (ECF No. 141). In response, the County contends that the Working Group was created pursuant to the County's authority to assist in re-planning and rezoning. (ECF No. 140).

In *Washington Suburban*, the Fourth Circuit explained that "[l]egislative acts . . . typically involve the adoption of prospective, legislative-type rules, rules that establish a general policy affecting the larger population. They also generally bear the outward marks of public decision making, including the observance of formal legislative procedures." 631 F.3d at 184 (internal quotations, citations, and alteration omitted). Information gathering and investigations

conducted prior to decision making are also legislative activities. *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 504-05 (1975) (citing *Gravel v. United States*, 408 U.S. 606, 625 (1972)). Simply put, "[w]hether an act is legislative turns on the nature of the act itself," not who or how it is performed. *Bogan v. Scott-Harris*, 523 U.S. 44, 45 (1998).

As an initial matter, Maryland law requires each county to create and maintain local comprehensive land use master plans consistent with the Maryland comprehensive plan. Md. Code, Land Use Art. § 1-417(b); *see Pulte*, 2017 WL 2361167, at *4. Naturally, such a requirement will prompt land use litigation. Some of those disputes have made their way to this Court and, in doing so, presented questions over legislative privilege. In one such dispute this Court held that "[p]lanning and zoning actions are legislative when they decide questions of law and policy and discretion and have broad community-wide implications, which encompass considerations affecting the entire planning area or zoning district." *Id.* (internal quotations and citations omitted); *see also Church v. Montgomery County, Maryland*, CV TDC-16-3698, 2018 WL 3869603, at *1 (D. Md. Aug. 15, 2018) (holding that a county's decision to deny an exception to the sewer standards was steeped in legislative thought and was legislative in nature).

Pursuant to §§ 1-415 and 1-416, of the Maryland Land Use Article, the Talbot County Planning Commission initiated a periodic review of its comprehensive land use plan. (ECF No. 140 at 10). Two members of the Planning Commission and two members of the Public Works Advisory Board convened to create a Working Group tasked with formulating policy recommendations for 11 Western Villages during the County's comprehensive re-planning and rezoning process. (ECF No. 140). The Working Group held at least four public meetings. Members convened work sessions to discuss the impact of the "Sustainable Growth and Agriculture Preservation Act of 2012" and "Village Growth and Sewer Policy." (ECF No. 140-

6

1). According to the Defendants, the Working Group conducted information gathering, debated options, formulated policies, drafted memoranda, and made presentations. Ultimately, it formulated a recommendation to the Planning Commission concerning, among other things, the 11 Western Villages' density, lot size, sewer availability, planning, and mapping in light of the state tier system.

This final recommendation was the culmination of numerous discretionary decisions that would, as a whole, have community-wide implications. Therefore, the Court finds that the Working Group's activities were legislative to the extent they involved the 11 Western Villages recommendation.

Regardless of how the Working Group's activities are characterized, Clayland argues that it is still entitled to disclosure because the Working Group was illegitimate. Specifically, because the Working Group was not "set up" by a "legislative enactment, resolution, directive, or communication from the County Council" it was illegal, and therefore unable to claim legislative privilege.

The privilege, however, covers "all those properly acting in a legislative capacity, not just actual officeholders." *Washington Suburban*, 631 F.3d at 181. It can protect the actions of agents, aids, assistants, and staffers who are "so critical" to the legislative process "that they must be treated as the [legislator's] alter ego[.]" *Gravel*, 408 U.S. at 616-17. The Fourth Circuit has even found the privilege applicable "whether or not the legislators themselves have been sued." *Benisek*, 241 F. Supp. 3d at 573 (citing *Washington Suburban*, 631 F.3d at 181). And even bodies composed of non-legislators are eligible to seek the protection of legislative privilege when delegated legislative authority. *See id.* at 573-74 ("All of the witnesses here, including the non-legislator members of the Committee, are eligible to seek legislative

7

privilege."); *see also Consumers Union of U. S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1350 (D.C. Cir. 1975) (holding that the non-legislator Correspondent's Association could claim legislative immunity). Legislative privilege is so broadly and readily applied because it:

> is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank

*Gravel*, 408 U.S. at 617 (quoting *Barr v. Matteo*, 360 U.S. 564, 572-573 (1959)).

The Working Group was composed of two members of the Planning Commission and two members of the Public Works Advisory Board. The Planning Commission exists pursuant to Talbot County Code § 190-12(c), to, among other things, make recommendations concerning land use laws. The Public Works Advisory Board was established in 1977 by Bill No. 72 to make recommendations concerning matters under the Jurisdiction of the Department of Public Works, such as sewage management. Talbot County Code, Ch. 24, Art. 1, § 24-1. Both of these bodies exist within the Talbot County government to make recommendations concerning their particular areas of expertise.

Defendants argue that the Working Group was created under the authority of the Planning Commission with the specific purpose of formulating recommendations concerning the rezoning and re-planning within the 11 Western Villages. Defendants maintain that the Working Group was legitimate because it was charged with a distinctly legislative purpose and it set forth to achieve that purpose through the legislative process.

Legislative privilege exists to protect the process, not particular players. It attaches to one's work and purpose, not title. These policy rationales support the idea that a committee,

created by members of two agencies, to pool expertise, gather information, hold public hearings, and ultimately proposed new laws, is actively participating in the legislative process. With the exception of actually voting on the legislation, it appears that the Working Group completed every meaningful phase that exists within the "sphere of legitimate legislative activity."

The Working Group's activities were legislative and legitimate. Thus, I find that the Defendants sufficiently established the applicability of legislative privilege and will uphold the privilege regarding the challenged "Ad Hoc Working Group documents."

### D. Third Party Waiver Under Legislative Privilege

Clayland argues that any legislative privilege was waived as to those documents and communications shared with Tom Alspach. (ECF No. 134 at 5). First, Clayland contends that Mr. Alspach is a lobbyist with an organization called the Talbot Preservation Alliance ('TPA") and the Working Group contacted him for review and comment. (*Id.*). Second, Clayland asserts that these communications reveal the "undue and improper influence apparent in" the Working Group. And last, Clayland argues that, while not squarely addressed under Maryland law, this Court should adopt an "emerging trend" in which courts distinguish between legislative communications between lobbyists, which waive privilege, and constituents, which do not. (*Id.*).

Defendants argue that copying Mr. Alspach did not waive legislative privilege. First, Defendants argue that there is no factual support to the assertion that Mr. Alspach is a lobbyist. (ECF No. 142). Second, Defendants state that none of the documents in question contain requests for review and comment. Last, Defendants argue that there is no "emerging trend" to adopt, but that this Court holding is *Pulte*, 2017 WL 2361167, squarely addresses this issue. (*Id.* at 8).

I find it unnecessary to address Mr. Alspach's role or the TPA because I agree that this Court's holding in *Pulte* is dispositive of Clayland's argument. In *Pulte*, the Honorable Timothy Sullivan of this Court presided over a nearly identical dispute concerning re-zoning that prompted argument over legislative privilege and waiver. 2017 WL 2361167, at *1. The plaintiff in *Pulte*, just as now, argued that the defendants' communications with third parties were not privileged. Following a detailed analysis of plaintiff's relied upon authority; this Court held that communications with third parties did not waive legislative privilege. Judge Sullivan reasoned that "[i]f the legislative privilege, like the principle of legislative immunity, is truly such that its importance is difficult to overstate, *see Bethune-Hill*, 114 F. Supp. 3d at 332, waiver cannot be premised on an action that courts have characterized as 'part and parcel' of the modern legislative process." *Pulte Home*, 2017 WL 2361167, at *8 (citing *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980)) (internal citation retained). Unlike other privileges, legislative privilege is unconcerned with confidentiality and "principally framed to ensure that legislators are free to make difficult decisions on controversial issues without fear" of costly future scrutiny. *Id.*

Just as in *Pulte*, "[t]he majority of the cases cited by [Plaintiff] arise in the context of redistricting litigation" and are of limited value here. *Id.* Although legislative privilege will yield when a strong public interest is present, as stated above, the Court finds no such interest is present now. "Unlike redistricting litigation, where the public's right to fair political representation is at stake, this case is about a private party's right to seek redress from the government for its private damages." *Id.* While the rationale supporting qualified legislative privilege support the doctrine of third party waiver, the "practical policy rationale justifying" absolute legislative privilege "lends support to a bright line rule that legislators do not have to comply with discovery requests related to their legitimate legislative activities." *Id.*

10

.       In light of *Pulte*, I find that the legislative privilege was not waived and the Court will uphold the privilege of documents challenged on the basis that a third party was copied or communicated with.

**E.     The Miscellaneous Documents**

I categorically address the remaining "miscellaneous" documents below.

**1.     Year 2012 Bates Stamp Nos. 227-28**

The July 19, 2018 order did not include page Year 2012 Bates No. 228 and upheld the privilege of Year 2012 Bates No. 227. This was a clerical error. The privilege of Year 2012 Bates No. 227-28 is upheld.

**2.     The Sphere of Legitimate Legislative Activity**

As discussed above, information gathering and compilation are within the sphere of legitimate legislative activity. *See Eastland*, 421 U.S. at 504. For many of the miscellaneous documents, Defendants explain that they are either communications during the Working Groups information gathering, the byproducts of that gathering, or simply part of the legislative process. Further, Defendants provide sufficient information to gauge when and why the disputed documents were created. Clayland argues that some documents include "fact information" that must be disclosed. In the world of absolute legislative privilege, there is no distinction between fact and non-fact information. The only distinction is whether the document was created during the legislative process or not. Clayland nonetheless asserts that Defendants failed to sufficiently demonstrate the applicability of legislative privilege.

I disagree and uphold the privilege of 2012 Bates Nos. 368, 445-47, 542, and 689-94; 2013 Bates Nos. 314, 315-25, 613, 657-59, and 928; and 2014 Bates No. 785.

**3.     Ms. Bryan's March 8, 2014 Email**

Additionally, Clayland argues that it is entitled to 2014 Bates Nos. 443-446 and 447-450 because the communications concern an email from Jeanne Bryan, a principal of Clayland. (ECF No. 141). Ms. Bryan's March 8, 2014 email poses questions to the City Council concerning two resolutions that the Council was considering in its replanning process and as to which the Planning Commission was providing input. The disputed documents are communications between council members concerning those resolutions, roles of the Council and Planning Commission in their interpretation, the degrees of deference to be given to various stakeholders providing input into the legislative process, as well as how to best work with those stakeholders in light of the re-zoning. The communications being prompted by a principal of Clayland does not change the fact that legislators contemplating stakeholder feedback andpublic comment are distinctly within the sphere of legitimate legislative activity. Therefore, I uphold the privilege of 2014 Bates Nos. 443-446.

As for 2014 Bates Nos. 447-450, Defendants argue that non-disclosure is appropriate for the same reasons as 2014 Bates Nos. 443-446, namely: legislative privilege, relevance, and, attorney-client privilege. Clayland asserts that there is no basis for non-disclosure, that arguments over relevance misconstrue its claims, and this serves as "one of many examples of the County Defendants refusing to participate in discovery in good faith." (ECF. No. 141 at 9). This Court, however, believes that the parties complicated a straight forward dispute.

Attorney-client privilege exists when there is: (1) communication; (2) between privileged persons; (3) in confidence; (4) for the purposes "of seeking, obtaining, or providing legal assistance to the client." *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *4 (D. Md. Dec. 9, 2010). Communications seeking and rendering legal assistance between a

county attorney and its client—the county council—are protected by attorney-client privilege. *See 2BD Assocs. Ltd. P'ship v. Cty. Comm'rs for Queen Anne's Cty.*, 896 F. Supp. 528, 536 (D. Md. 1995) (permitting county attorney to assert attorney-client privilege in zoning dispute); *See also In re Cty. of Erie*, 473 F.3d 413, 422 (2d Cir. 2007) (holding that attorney-client privilege protected emails between a county attorney and various county officials that concerned compliance with legal obligations). Here, 2014 Bates Nos. 447-450 are communications between council members seeking and obtaining answers to legal questions posed by Ms. Bryan's. As such, I uphold the privilege of 2014 Bates Nos. 447-450

### 4. Third Party Information Gathering

In light of the above, I uphold the privilege of 2013 Bates Nos. 111-13 and 2014 Bates Nos. 565-66.

### 5. Insufficient Demonstrations

Clayland has consistently asserted that Defendants failed to demonstrate the applicability of legislative privilege. While I have disagreed with this assertion as to most of the disputed documents, I do not for all. Defendants made no showing as to Year 2012 Bates No. 398 and as for 2013 Bates No. 929 stated "there are also calculations and various notes made by whomever was reviewing the document." These are insufficient demonstrations of the applicability of legislative privilege. Defendants are ordered to produce 2012 Bates Nos. 398 and 2013 Bates Nos. 929.

## II. CONCLUSION

For the foregoing reasons, Defendants' Motion For Protective Order is GRANTED IN PART and DENIED IN PART. All discovery issues before this Court are resolved and the

parties are reminded that the deadline for dispositive motions is October 31, 2018.  A separate Order shall follow.

Dated:  October 1, 2018                           /s/
J. Mark Coulson
United States Magistrate Judge